[Civ. No. 11581.   First Dist., Div. Two.   May 6, 1942.]

J. W. DONNELLY, Respondent, v. UNDERWRITING MEMBERS OF LLOYD'S (an Unincorporated Association), Appellant.

Bronson, Bronson & McKinnon for Appellant.

Livingston & Livingston for Respondent.

THE COURT.—It appearing that following the judgment and decision in the above entitled cause on October 1, 1941, a petition for rehearing questioning the jurisdiction of this court was granted, and that the cause was for that reason transferred to the Supreme Court, and it appearing that by its order dated April 23, 1942, the cause was re-transferred to this court by the Supreme Court, and no other reasons appearing why the disposition of the cause should be delayed,

It is hereby ordered that the judgment appealed from is reversed and judgment is ordered entered in favor of the defendant for the reasons stated in our former opinion filed herein October 1, 1941, which is hereby adopted as the opinion of the court.

The prior opinion of October 1, 1941, is as follows:

STURTEVANT, J.—The plaintiff commenced an action to obtain declaratory relief. The defendant answered and after

a trial before the court sitting without a jury the court made an interlocutory decree in favor of the plaintiff. From that decree the defendant has appealed.

The plaintiff is the owner of Galesworthy D, a trotting stallion. On November 23, 1938, the defendant insured the horse for a period of one year. On July 9, 1939, the horse fractured a bone in his left hind leg. The break was of the bone between the fetlock and the hoof. Some union was made but in the language of a layman it was a gristle union. The horse is and will continue to be wholly incapacitated from racing or any other kind of work. The plaintiff claims that under the terms of the policy he is entitled to kill the horse and to collect the insurance. However his counsel stated in open court and many times repeated, "I am not contending . . . the horse is suffering to such degree that his suffering requires his slaughter." Accepting such statement the defendant thereupon contends that the plaintiff had no claim under the clear provisions of the policy.

The policy consists of a written proposal and a written acceptance. The proposal is in the form of a questionnaire. From it we quote, "2. For what purpose kept or employed? (a) Racing (trotting)." The acceptance, among others, contains these provisions: (1) "We hereby agree to indemnify the said J. W. Donnelly in the above sums against the death by natural causes and/or fire and/or lightning and/or accident and/or the Act of God or man as well as from the necessity of its destruction arising from any of the above causes of the said Stallion Trotter which may occur during that time, anywhere within the limits of the U. S. of America. . . . (2) This insurance does not cover loss occasioned through an animal becoming unfit or incapable of fulfilling the functions or duties for which it is kept or employed unless expressly agreed to by endorsement hereon, and no insured animal shall be used for purposes other than those stated in the proposal form, nor be operated upon, nor be slaughtered unless deemed necessary on the advice of a qualified Veterinary Surgeon, and any contravention of these conditions shall render the policy null and void." For convenience of reference we have placed the numbers on said paragraphs. The plaintiff produced the written statement of a veterinary surgeon, Dr. Arburua, in which he stated: "I have been asked whether in my judgment it is necessary to destroy this horse. My answer is that this depends upon the sense in which the word 'necessary' is used. From a

business standpoint the horse is no longer useful. He cannot be ridden or driven and whatever is spent on his keep will be money wasted. Therefore, if 'necessary' means commercially necessary, I say that it is necessary to destroy the horse. On the other hand, if 'necessary' means necessary from the sentimental or humanitarian side, then it is not necessary to destroy the horse. If he does no work but is simply allowed to remain in pasture, he may live the normal number of years without any great pain. So long as the affected part is kept at rest and not used there will be no great amount of suffering and if one is ready to pay the expense of keeping the horse for sentimental reasons I advise that this can be done. Therefore, looking at the question as one of humanity or sentiment, it is not necessary to destroy the horse.''

█ The plaintiff also quotes his own testimony to the effect that it now costs him $22.50 for feed and $25 for care of the horse each month. The plaintiff contends that under the terms of the policy it has become necessary for him to destroy the horse and that he will then be entitled to collect $2,500, the amount set forth in the policy. The defendant controverts that contention by asserting that under the clear terms of the policy (paragraph 2, *supra*) no claim exists against it. We think that assertion must be sustained. Said paragraph is in effect as though it provided: "This insurance does not cover loss, (cost of maintenance), through an animal becoming unfit or incapable of fulfilling the functions or duties, (race trotting), for which it is kept or employed. . . ." If the horse developed a spavin, or ring-bone, or became wind-broken, or severed a tendon, no one would claim it was necessary to destroy it nor that the insured would have a claim. Galesworthy D suffers from an unknit broken bone from which, as admitted above, he does not so suffer as to require that he be destroyed. It follows that he falls in the same class as horses afflicted with spavin, ring-bone, suffering from being wind-broken or suffering from a severed tendon. In the absence of a claim that for humanitarian reasons the horse should be destroyed, the clear terms of said paragraph (2) do not authorize that act and, on the other hand, clearly limit defendant's liability under the policy.

█ The plaintiff most earnestly contends that "necessity of destruction" of the horse, among other things means commercial necessity. The policy contains provisions to the con-

trary. One provision is the horse shall not "be slaughtered unless deemed necessary on the advice of a qualified veterinary surgeon," that is, on medical not commercial advice. Again the policy (paragraph 1) is clearly a contract insuring against *loss from death*. Insofar as a commercial question is presented the loss is limited to the stipulated value of the horse and, by omission, excludes the cost of care and maintenance. The contention that "necessity of destruction" presents a question of commercial necessity is true, in part, but not exclusive. The concept, "necessity of destroying" a fine horse, includes, among others, reasons humanitarian, medical, commercial, and personal. To the minds of different owners each of such factors may have different weight. A person having much sentiment will have a different reaction in reaching his personal or humanitarian conclusions from one who has less sentiment. As to the medical question the policy clearly vests it in the advice of a qualified veterinary surgeon. The humanitarian, personal, and medical reasons in the instant case are each eliminated by the admissions made at the trial. As to the commercial question the policy clearly limits the liability of the insurer to the stipulated value of the horse and not to the cost of maintenance and care.

The judgment appealed from is reversed and judgment is ordered entered in favor of the defendant.

Nourse, P. J., and Dooling, J. pro tem., concurred.

A petition for a rehearing was denied June 5, 1942, and respondent's petition for a hearing by the Supreme Court was denied July 2, 1942. Carter, J., and Traynor, J., voted for a hearing.